## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 8010 | **DATE** | 6/1/2004 |
| **CASE TITLE** | Bowe Bell & Howell Company vs. Immco Employees' Assoc., et. al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated in the attached memorandum opinion and order, Immco's motion to dismiss or, alternatively, motion to transfer venue to the Eastern District of Pennsylvania is denied. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | JUN 0 2 2004 | |
| | Notified counsel by telephone. | date docketed | 17 |
| ✓ | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| MF | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BOWE BELL + HOWELL COMPANY, )
)
    Plaintiff, )
)
v. ) No. 03 C 8010
)
IMMCO EMPLOYEES' ASSOCIATION; ) Judge John W. Darrah
JAMES YUKNA and ALBERT SPINOZZI, )
individually and as representatives of a )
defendant class of other similarly situated )
retirees; and RONALD BUCKLAND, )
individually and as a representative of a )
defendant class of other similarly situated )
retirees, )
)
    Defendants. )

DOCKETED JUN 0 2 2004

## MEMORANDUM OPINION AND ORDER

Plaintiff, Bowe Bell + Howell Company, filed a declaratory action against Defendants, Inserting and Mailing Machine Company ("IMMCO") Employees' Association; James Yukna and Albert Spinozzi; and Ronald Buckland. Plaintiff seeks a declaration that it was entitled to modify, amend, or terminate the medical benefits of the Retiree Classes in an Employee Retirement Security Act ("ERISA") Plan. Presently before the Court is IMMCO's Motion to Dismiss or, Alternatively, Motion to Transfer Venue to the Eastern District of Pennsylvania. For the foregoing reasons, that motion is denied.

## LEGAL STANDARD

In reviewing a motion to dismiss, the court reviews all facts alleged in the complaint and any reasonable inferences drawn therefrom in the light most favorable to the plaintiff. *See Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000). A plaintiff is not required to plead the facts or elements of a claim, with the exceptions found in Federal Rule of Civil Procedure 9. *See Swierkiewicz v. Sorema*, 534 U.S. 506, 511 (2002); *Walker v. Thompson*, 288 F.3d 1005, 1007 (7th Cir. 2002). Dismissal is warranted only if "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The "suit should not be dismissed if it is possible to hypothesize facts, consistent with the complaint, that would make out a claim." *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).

## BACKGROUND

The facts, for the purposes of this motion, are taken as true from Plaintiff's Complaint. Plaintiff is a Delaware corporation that manufactures mail and messaging equipment in facilities throughout the United States. Plaintiff is both a "plan sponsor" and a "fiduciary" of the Bell + Howell Company Mail Processing Systems Division Blue Cross Health Insurance Plan (the "Plan"), formerly known as the Bell + Howell Company Phillipsburg Division Blue Cross Health Insurance Plan. The Plan provides medical, dental, and vision benefits to certain groups of hourly and salaried retirees who were formerly employed at Plaintiff's Allentown, Pennsylvania facility.

Defendant IMMCO is an unincorporated association with its headquarters in Easton, Pennsylvania. IMMCO is a labor organization that, until November 2001, represented and acted

for certain hourly employees at the Allentown facility who participated in the Plan while those employees were employed by Plaintiff.

Defendants Yukna and Spinozzi are former hourly employees at the Allentown facility. Yukna and Spinozzi received retiree medical benefits under the Plan since 2001. Yukna lives in Phillipsburg, New Jersey; and Spinozzi lives in Nazareth, Pennsylvania. These Defendants represent the hourly retiree class, which consists of approximately three-hundred individuals.

Defendant Buckland is a former salaried employee at the Allentown facility. Buckland has received retiree medical benefits under the Plan since 1993. Buckland is a resident of Easton, Pennsylvania. Buckland represents the salaried retiree class, which consists of approximately seventy-five individuals.

The retiree medical benefits for members of the salaried retiree class are governed by the Blue Cross/Blue Shield contract covering employees and retirees of Plaintiff. Prior to 1994, salaried employees at the Allentown facility became eligible for retiree medical benefits upon retirement if they were sixty-five years old and had five years of service. Salaried employees could also take early retirement at age sixty, if they had ten years of service, or at age fifty-five, if they had fifteen years of service. In all cases, salaried employees must have been on active duty immediately before retirement to obtain retiree medical coverage.

The salaried retirees supplemental plan description states:

> Bell & Howell Company reserves the right in its sole discretion to determine the nature and amount of medical benefits, if any, that will be provided to those individuals who retire from employment with Bell & Howell Phillipsburg Company and their dependents. Bell & Howell also reserves the right in its sole discretion to reduce, modify or terminate medical benefits provided to retired employees and their dependants at any time.

3

The supplemental plan description also states that "Bell & Howell Company reserves the right to change or modify the contribution level at any time."

Plaintiff amended the Plan, effective January 1, 1994, with respect to salaried employees at the Allentown facility. For eligible salaried employees retiring on or after January 1, 1994, the Plan was amended as follows: (1) coverage under the Plan terminated for all retirees at age sixty-five; (2) Dental benefit coverage ceased for dependents of early retirees; (3) to be eligible for retiree coverage upon early retirement, salaried employees were required to have ten additional years of service than previously required; (4) those eligible for benefits upon early retirement at age sixty were required to pay 50% of the total cost of their coverage under the Plan up to age sixty-five; (5) those eligible for benefits upon early retirement at age fifty-five were required to pay 100% of the total cost of their coverage under the Plan up to age sixty-five; and (6) early retirees must pay 100% of the total cost of coverage for their eligible spouses and dependents. No member of the salaried retiree class formally challenged or contested Plaintiff's decision to change the terms and administration of the Plan at that time.

Before November 26, 2001, active hourly employees at the Allentown facility were represented by IMMCO for collective bargaining purposes. Through its representation, IMMCO and Plaintiff's predecessors agreed to a Supplemental Pension Plan Agreement in 1966, which provided that hourly employees would receive hospitalization insurance benefits upon their retirement. This agreement was restated three times after 1966, most recently in 1983.

The Supplemental Agreement in 1983 contained the following provisions for amendment or termination of the Agreement:

4

> Unless such notice is given this agreement shall be automatically renewed on
> June 1, 1985, and each June 1 thereafter for successive one-year periods, subject
> to the right on the part of either party to give similar notice of its desire to modify,
> amend, or terminate this agreement and to negotiate with respect to matters
> covered by this agreement before the end of any such extension period. No
> negotiations with respect to any matters covered by this agreement shall begin
> before 60 days prior to the expiration of any period during which this agreement is
> effective, and during any such negotiations this agreement shall remain in full
> force and effect. If no agreement has been reached within such 60-day period,
> either the Company or the Union may terminate this agreement by giving notice to
> the other.

On March 28, 2001, in conjunction with its effort to renegotiate the collective bargaining agreement with IMMCO, Plaintiff provided written notice to IMMCO of its intent to modify, amend, or terminate the Supplemental Agreement. On May 31, 2001, Plaintiff provided IMMCO with a Notice of Termination of Agreement. Through this notice, Plaintiff terminated the Supplemental Agreement but notified IMMCO that the terms of the terminated Agreement for then-current retirees and for the active employees would remain during negotiations for a new collective bargaining agreement, as required by the National Labor Relations Act. After the parties were unsuccessful in reaching a new collective bargaining agreement, Plaintiff gave IMMCO notice that, effective October 29, 2001, it would implement certain portions of its final offer to IMMCO with respect to the collective bargaining agreement and retiree medical benefits for hourly employees.

On November 26, 2001, IMMCO notified Plaintiff that it disclaimed its interest in representing hourly employees at the Allentown facility. As a result of IMMCO's withdrawing its representation of hourly employees, the terms and conditions of the hourly employees' employment were no longer subject to a collective bargaining agreement of the Supplemental Agreement. Effective November 26, 2001, the retiree medical benefits for former hourly

5

employees in the hourly retiree class under the Plan became governed by Plaintiff's Blue Cross/Blue Shield contract. This contract and the summary plan description do not contain any language that would vest medical benefits for the former hourly retirees in any way or for any duration. There is also no language prohibiting Plaintiff from amending or terminating the Plan for these retirees at any time for any reason.

On or about October 29, 2003, Plaintiff announced its intention to amend the benefits under the Plan provided to hourly and salaried retirees under age sixty-five and to terminate the benefits provided to hourly and salaried retirees age sixty-five and older, effective January 1, 2004. The announced Plan amendment modified the Plan for retirees under the age of sixty-five by: (1) increasing the retirees' contributions for coverage under the Plan; (2) capping the amount Plaintiff will contribute for retirees' medical benefit coverage for future years; (3) requiring retirees to pay 100% of the total cost of coverage for their eligible spouses and dependents; and (4) terminating eligibility for coverage for retirees and their eligible dependents and spouses upon reaching age sixty-five. The announced Plan amendments also terminated coverage for retirees over the age of sixty-five and their spouses over the age of sixty-five.

These amendments were designed to consolidate all active employees and retiree health care plans sponsored and administered by Plaintiff into a single, equitable, nationwide health care benefit program. The new Plan is designed with cost-saving features that will provide quality health care benefits and services in a manner that is comparable and fair to employees and retirees across all of Plaintiff's facilities. These amendments will make the retiree classes' benefits identical to the benefits provided to all other retirees through plans sponsored and administered by Plaintiff. By letter dated October 29, 2003, Plaintiff notified the retiree classes

6

that the 2004 amendments would become effective as of January 1, 2004, and provided them with a summary explaining the changes. Thereafter, several members of the retiree classes contacted Plaintiff and announced their intent to challenge the legality of the amendments in court.

## ANALYSIS

IMMCO seeks to dismiss Plaintiff's Complaint for failure to state a claim and lack of subject matter jurisdiction. According to IMMCO, ERISA does not provide a cause of action for Plaintiff's claim. IMMCO also contends that Plaintiff's claim lacks jurisdiction under the Declaratory Judgment Act.

Under ERISA, only certain parties may bring actions. Specifically, one provision allows a claim to be brought "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provision of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3). Plaintiff thus argues jurisdiction is proper under § 1132(a)(3)(B)(ii) because it is seeking a declaration to enforce the terms of the Plan that permit amendments.

However, an employer may be an ERISA fiduciary for some purposes, but not for other purposes. *See Pegram v. Herdich*, 530 U.S. 211, 225-26 (2000). When an employer acts to terminate or amend an ERISA plan, the employer is not acting as a fiduciary. *Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996). Therefore, when Plaintiff seeks to enforce the terms of the Plan permitting amendments, it is not acting in a fiduciary capacity; and Plaintiff may not bring an action under § 1132(a)(3)(B)(ii).

7

Plaintiff, though, asserts that jurisdiction is proper under the Declaratory Judgment Act, 28 U.S.C. § 2201. The Declaratory Judgment Act does not, by itself, confer jurisdiction in federal courts; but "[f]ederal courts have regularly taken original jurisdiction over declaratory judgment suits in which, if the declaratory judgment defendant brought a coercive action to enforce its rights, that suit would necessarily present a federal question." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 16, 20 (1983) (*Franchise Tax Bd.*).

IMMCO contends that under *Franchise Tax Bd.*, it is improper to accept jurisdiction of ERISA actions based on the Declaratory Judgment Act. *See Franchise Tax Bd.*, 463 U.S. 20-22; *Pabst Brewing Co. v. Corrao*, 176 F.R.D. 552, 560-61 (E.D. Wis. 1997). However, the holding in *Franchise Tax Bd.* did not bar all declaratory judgment actions that arise under ERISA, but, rather, held "the determination of the existence of a federal question does not rest on whether the federal courts would have jurisdiction over a coercive action brought by a defendant. The dispositive issue is whether such a coercive action would itself present a substantial question of federal law." *Commercial Nat'l Bank of Chicago v. Demos*, 18 F.3d 485, 489 (7th Cir. 1994) (*Commercial Nat'l*). Thus, in *Franchise Tax Bd.*, jurisdiction was not proper "because the underlying cause of action was grounded on state law." *Commercial Nat'l*, 18 F.3d at 490.

Here, if IMMCO or the other Defendants brought a coercive action against Plaintiff relating to their benefits or participation in the Plan, that action would be based on Section 502 of ERISA, 29 U.S.C. § 1132. IMMCO and the Defendants do not argue to the contrary. Accordingly, this case presents a substantial question of federal law; and federal jurisdiction is proper, and Plaintiff has stated a claim upon which relief can be granted.

IMMCO also moves to transfer venue to the Eastern District of Pennsylvania. In general, "for the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). A transfer is proper if: (1) the venue is proper in both the transferee and transferor courts; (2) it is for the convenience of the parties or witnesses; and (3) it is in the interest of justice. *Law Bulletin Publ'g Co. v. LRP Publ'n, Inc.*, 992 F. Supp. 1014, 1017 (N.D. Ill. 1998) (*Law Bulletin*). District courts have broad discretion to grant or deny motions to transfer, and the burden is on the moving party to establish that the transfer is warranted. *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir. 1989) (*Heller*).

Here, 29 U.S.C. § 1132(e)(2) provides that venue is proper in an ERISA action in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found. IMMCO concedes venue is proper in the Northern District of Illinois because the Plan is administered here. Plaintiff concedes that venue would also be proper in the Eastern District of Illinois because at least one of the Defendants resides there. Therefore, the only issues are the convenience of the parties and witnesses and the interest of justice.

When evaluating the relative convenience of the parties and witnesses, the relevant factors to consider are: (1) the plaintiff's initial forum choice, (2) the convenience of the witnesses, (3) the relative ease of access to other evidence, (4) the situs of material events, and (5) the relative convenience of the parties in litigating in the respective forums. *Amoco Oil Co. v. Mobil Oil Corp.*, 90 F. Supp. 2d 958, 960 (N.D. Ill. 2000) (*Amoco*); *Georgouses v. Natec Res., Inc.*, 953 F. Supp. 728, 830 (N.D. Ill. 1997) (*Georgouses*).

9

The plaintiff's initial choice of forum is usually afforded substantial deference, particularly when it is the plaintiff's home forum. The plaintiff's choice of forum should generally be supplanted by the court when trying the case in the plaintiff's chosen forum will result in vexation and oppression to the defendant that far outweighs the convenience to the plaintiff. *Kamel v. Hill-Rom Co.*, 108 F.3d 799, 802 (7th Cir. 1997). However, there are other factors to consider; and the weight given to the plaintiff's choice of forum can vary, depending on the circumstances of each individual case. *Law Bulletin*, 992 F. Supp. at 1017; *Georgouses*, 963 F. Supp. at 730.

In this case, Plaintiff chose the Northern District of Illinois as the forum. Plaintiff's corporate headquarters and principal place of business are located in Lincolnwood, Illinois, which is located in this district. Defendant also concedes that the Plan is administered in this district. Accordingly, Plaintiff's choice of forum as the Northern District of Illinois will be given substantial deference.

The convenience of the witnesses who will testify at trial is one of the most important factors when deciding on an appropriate forum. *Law Bulletin*, 992 F. Supp. at 1018. However, the defendant will not be granted a transfer merely by presenting a long list of witnesses and claiming their inconvenience. *Law Bulletin*, 992 F. Supp. at 1018. Courts go beyond simply looking at the number of witnesses and must weigh the quality and nature of their proposed testimony. *Law Bulletin*, 992 F. Supp. at 1018. The defendant is obligated to specify particular witnesses to be called and explain the nature of their testimony. *Heller*, 883 F.2d at 1293. In order to overcome the deference to the plaintiff's choice of forum by arguing witness convenience, the defendant must show that the testimony of these particular witnesses is

necessary to its case. *Gen. Portland Cement Co. v. Perry*, 204 F.2d 316, 319 (7th Cir. 1953). As a practical matter, it is usually assumed that witnesses within the control of the parties will appear voluntarily. Therefore, more attention should be given to the location of non-party witnesses and those witnesses not within the control of the parties. *Spherion Corp. v. Cincinnati Fin. Corp.*, 183 F. Supp. 2d 1052, 1058 (N.D. Ill. 2002).

IMMCO argues that most, if not all, of the witnesses live in Pennsylvania and neighboring New Jersey. IMMCO also claims that 50% of these witnesses live in the Eastern District of Pennsylvania. However, IMMCO fails to offer sufficient information to merit a transfer of this case because of the convenience of the witnesses. As such, this factor weighs against granting IMMCO's motion to transfer.

Generally, the ease of access to other evidence consisting of documents is considered a neutral factor when weighing whether to transfer a particular case. *Bryant v. ITT Corp.*, 48 F. Supp. 2d 829, 833 (N.D. Ill. 1999). Here, IMMCO argues that much of the documentary evidence is located in the Eastern District of Pennsylvania. However, Plaintiff argues that many of the documents are located in this district, where the Plan is administered. Thus, it appears relevant documents may be located in both districts. Therefore, this factor favors neither party.

As to the situs of the material events factor, events happened both in the Northern District of Illinois and the Eastern District of Pennsylvania. The place where the Plan is administered, the payment of benefits are approved, Plaintiff's Board of Directors considered and approved the Plan amendments, and Plaintiff's Compensation Committee met to evaluate options and recommend the amendments is in the Northern District of Illinois. Plaintiff's Administrative Committee, which has been delegated to act as the Plan's administrator, is located in this district,

as well. In the Eastern District of Pennsylvania, the collective bargaining agreements and supplemental pension plans were negotiated, and promises were made to IMMCO retirees. Accordingly, this factor does not favor either party.

In considering the final factor, the convenience of the litigants, the parties' respective residences and their ability to pay for the expenses of litigating in a particular forum are relevant inquiries. *Brandon Apparel Group v. Quitman Mfg. Co.*, 42 F. Supp. 2d 821, 834 (N.D. Ill. 1999) (*Brandon Apparel*). A case should not be transferred if it "merely transforms an inconvenience for one party into an inconvenience for the other party." *Brandon Apparel*, 42 F. Supp. 2d at 834.

IMMCO is a small association, and the three named individual Defendants are now retired. However, while Plaintiff is a large national company, it has represented that it may not have involvement with the individual class representatives. Plaintiff has also represented that it may need to travel where Defendants reside to take depositions. Thus, while there may be inconvenience for Defendants to litigate the case in the Northern District of Illinois, this inconvenience is slight; and this factor does not weight enough in favor of transferring to overcome Plaintiff's choice of forum.

The analysis of the interest of justice focuses on the efficient administration of the judicial system, as opposed to the private consideration of the litigants. *Amoco*, 90 F. Supp. 2d at 961. This analysis considers: (1) the relative familiarity of the courts with the applicable law; (2) the relation of the respective forums with the issues in the case, and (3) the relative congestion of the courts' dockets. *Amoco*, 90 F. Supp. 2d at 961; *Georgouses*, 963 F. Supp. at 730.

In this case, all of the issues arise under the federal ERISA statutes. Therefore, both districts are familiar with the law; and this factor does not weigh in favor of transfer.

Both forums have strong relations with the issues in the case. As discussed above, many of the Defendants, including IMMCO, are located in the Eastern District of Pennsylvania; and, consequently, decisions made in the matter will affect people and interests in the Eastern District of Pennsylvania. However, Plaintiff is headquartered in the Northern District of Illinois, makes corporate decisions in this district, and administers the Plan in this district. Accordingly, this factor is neutral and does not favor either party.

Finally, there is no evidence that cases are resolved faster in the Eastern District of Pennsylvania than in the Northern District of Illinois. Therefore, this factor does not weigh in favor of transfer.

IMMCO and the remaining Defendants have failed to meet their burden demonstrating that the convenience of the witnesses and parties and the interest of justice require that the case be transferred to the Eastern District of Illinois. Accordingly, the motion to transfer venue is denied.

## CONCLUSION

For the foregoing reasons, IMMCO's Motion to Dismiss or, Alternatively, Motion to Transfer Venue to the Eastern District of Pennsylvania is denied.

Dated: 6-1-04

JOHN W. DARRAH
United States District Judge

13